# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/17/15

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257 6800
FAX 212 257 6845
WWW.WIGDORLAW.COM

**Scott G. Grubin**
sgrubin@wigdorlaw.com

July 16, 2015

**VIA ECF**

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

*The Court will hold a pre-motion conference on July 27, 2015 at 4:30 P.M. So ordered.*

*JG Koeltl*
*U.S.D.J.*
*7/17/15*

Re: Bradford Bodine v. Canaccord Genuity Inc., et al.; No.: 15-cv-3019

Dear Judge Koeltl:

We represent Plaintiff Bradford Bodine ("Plaintiff" or "Bodine") in the above-referenced matter. We write to respond to the points raised in Defendants Canaccord Genuity Inc. ("Canaccord") and Daniel Daviau's ("Daviau" and collectively "Defendants") letter requesting a pre-motion conference dated July 13, 2015. Additionally, we request that the pre-motion conference occur on Monday, July 27, 2015 at 4:30 p.m. during the already scheduled pretrial conference. (See Dkt. No. 5).

**A. Factual Background**

In September 2013, Defendants hired Bodine as Senior Managing Director, Head of U.S. Fixed Income in the United States to build a fixed income business. (Compl. ¶ 16). On September 19, 2013, Canaccord provided Bodine with an offer letter that provided his compensation would consist of, among other things, a base salary of $350,000 and equity compensation and bonuses, both guaranteed and discretionary. (Id. ¶¶ 31-33). The offer letter provided that Bodine would be guaranteed at least $150,000 in bonus compensation each of his first two years and granted Canaccord stock in the amount of $500,000 in accordance with Canaccord's "Long Term Incentive Plan" ("LTIP"). (Id. ¶¶ 34, 38).

On May 27, 2014, Plaintiff agreed to a Loan Agreement in the amount of $308,000 secured by Plaintiff's right to the $500,000 stock grant originally provided in his September 19, 2013 Canaccord offer letter. (Id. ¶ 47).

On October 31, 2014, Canaccord terminated Plaintiff's employment without cause. (Id. ¶¶ 53-54). Although Plaintiff's stock grants had not vested, Defendants offered to accelerate and liquidate them to cover repayment of the debt from the Loan Agreement and any tax liability but cancel the stock units that remained after applying them to debt and taxes. (Id. ¶ 58). Plaintiff refused to agree to

# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

The Honorable John G. Koeltl
July 16, 2015
Page 2

this. (Id.). Canaccord subsequently withheld payment of the $150,000 guaranteed bonus as leverage to cover the debt, but belatedly paid the amount after repeated demands. (Id. ¶¶ 56-57, 68).

Defendants' failure to pay Plaintiff's guaranteed bonus or provide any severance caused Plaintiff to experience severe cash flow problems, forcing Plaintiff to prematurely liquidate a retirement account and suffer long term and extensive financial damage. (Id. ¶¶ 59-61). Canaccord has demanded immediate payment of the loan and threatened to cancel any stock units that would remain after repayment. (Id. ¶¶ 63-64). Bodine is also subject to a restrictive covenant that imposes significant financial harm on his ability to secure employment in an industry in which he has worked for more than twenty five years. (Id. ¶ 73). Under guidelines for the stock plan, if Canaccord determines that Bodine becomes employed by a competitor before the shares vest after three years from the offer letter, the company can prevent the stock grant from vesting. (Id. ¶¶ 39-40).

## B. Defendants' Anticipated Motion to Dismiss

Defendants' primary grounds for moving to dismiss are: (1) a lack of subject matter jurisdiction based on a failure of diversity; (2) inability for Plaintiff to maintain a New York Labor Law ("NYLL") claim for failure to wages because he is an executive; (3) a claim concerning the $150,000 payment is moot; and (4) there is no case or controversy for a declaratory judgment on the restrictive covenant.[1] Plaintiff responds to each of these grounds below.

### 1. Subject Matter Jurisdiction

Defendants' pre-motion conference letter asserts that diversity is not complete because Plaintiff is a citizen of New York and Canaccord has its principal place of business in New York. However, the Complaint asserts that Canaccord's headquarters is located in Canada. (Compl. ¶ 13). Defendants' contrary assertion that Canaccord's principal place of business is New York (Dkt. No. 4) is not entitled to deference, but rather there exists a factual dispute exists over the location of Canaccord's principal place of business.

In Hertz Corp. v. Friend, the Supreme Court "conclude[d] that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the

---

[1] Defendants also assert that they intend to move on the grounds that the promissory estoppel and unjust enrichment claims are covered by contracts or duplicative of other causes of action and the individual claims against Daviau should be dismissed because there is no basis for individual claims under the causes of action. Since these reasons are only cursory mentioned in the Defendants' pre-motion conference letter and are not dispositive of this action, Plaintiff will respond to them at the time Defendants move to dismiss.

# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

The Honorable John G. Koeltl
July 16, 2015
Page 3

corporation's activities. 559 U.S. 77, 92-93 (2010). A principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id. It can be difficult to determine which of a business' location is the "principal" or most important "place" when a "corporation may have several plants, many sales locations, and employees located in many different places." Id.

Here, the Complaint alleges that Daviau is the President of Canaccord Genuity, Inc. and Head of Canaccord's United States operations. (Compl. ¶ 14). Daviau is a resident of Canada and presumably works out of the Canadian headquarters. (Id.). Daviau's control of the U.S. operations is corroborated by Canaccord's Fiscal 2015 Annual Report, which states:

> In February, Dan Daviau was appointed CEO of North American Capital Markets, an appointment that reflects his extensive track record of serving and growing our client base in both our Canada and US operations. At the start of fiscal 2016, Canaccord Genuity will combine its Canadian and US operations into a unified North American business and streamline our reporting businesses into three: North America, UK & Europe and Asia-Pacific.

(http://www.canaccordgenuitygroup.com/EN/Online%20Annual%20Report%202015/genuity.html). Additionally, although Defendants assert that Plaintiff incorrectly identified the headquarters of Canaccord's parent company Canaccord Genuity Group, Inc., Plaintiff intends to demonstrate that the entities are operated as one under the name Canaccord Genuity. (http://www.canaccordgenuity.com/; see also http://www.vault.com/company-profiles/commercial-banking-and-investment-banking/canaccord-genuity-inc/company-overview.aspx) ("Canaccord Genuity is a global investment banking firm headquartered in Canada.").

Based on the foregoing, Defendants cannot defeat diversity jurisdiction on a motion to dismiss accepting the factual allegations as true. Since determining a corporation's principal's place of business is a factual issue, Plaintiff should be entitled to discovery before Defendants are permitted to move to dismiss on the basis of lack of subject matter jurisdiction.[2]

---

[2] Alternatively, one of Canaccord's other U.S. offices such as the Boston office may be the corporation's principal place of business, since many high level executives work out of that office, including the "the Chief Financial Officer of Canaccord Genuity Inc. (a US broker-dealer based in Boston, Massachusetts and a subsidiary of Canaccord Genuity Group Inc.)." (http://www.canaccordgenuitygroup.com/EN/IR/CORPGOVERNANCE/Pages/Executives.aspx)

# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

The Honorable John G. Koeltl
July 16, 2015
Page 4

### 2. Applicability of New York Labor Law to Executives

"Executives are employees for purposes of Labor Law article 6, except where expressly excluded." Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609, 616 (2008). While executives are excluded from coverage under some provisions of the New York Labor Law ("NYLL"), they are not excluded from coverage under Labor Law § 193, id., which, inter alia, prohibits an employer from making any deduction or "charge against wages." NYLL § 193; Wachter v. Kim, 82 A.D.3d 658, 663 (1st Dep't 2011)(finding guaranteed compensation were wages and protected by Labor Law §193 and §198).

Defendants do not challenge that the guaranteed bonus constitutes wages. Even if Plaintiff has to repay the loan, Defendants cannot deduct from his wages to do so. See Maggione v. Bero Constr. Corp., 106 Misc.2d 384, 386 (N.Y. Sup. Ct., Seneca Cnty 1980) (finding there are no exceptions to employee under §193 and that the defendant cannot deduct from the wages of the plaintiff "indirectly by withholding a portion of plaintiff's pay to satisfy any obligation that may be due to defendant on the counterclaim."). Thus, the Complaint plausibly alleges that Defendants withheld the guaranteed bonus as charge against Plaintiff's debt.

Based on the foregoing, Defendants' charge or deduction was unlawful under the NYLL and Plaintiff's status as an executive does not preclude his ability to pursue a claim under the NYLL.

### 3. Payment of Guaranteed Bonus Does Not Moot Plaintiff's Claims

The fact that Defendants belatedly recognized their intentional, baseless and unlawful withholding does not moot Plaintiff's claims for damages under the NYLL or an alternative contract theory. NYLL § 198 provides for recovery of not only the underpayment, but "all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." Thus, Plaintiff is entitled to seek the attorney's fees he incurred pursuing his wages and litigating this action for damages along with any application interest and liquidated damages in the amount of the guaranteed bonus unless Defendants can prove good faith compliance with the law. See In re CIS Corp, 206 B.R. 680, 687 (S.D.N.Y. 1997) ("The New York Labor Law is a fee-shifting statue, the overall intent of which is to protect employees from having their rightful wages kept from them."). To preclude recovery of these damages would sanction an employers' ability to violate the NYLL without penalty or render the labor law's prohibitions meaningless. Thus, Plaintiff should be able to proceed on his labor law claim despite the payment of the guaranteed bonus under the threat of litigation.

# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

The Honorable John G. Koeltl
July 16, 2015
Page 5

Alternatively, Plaintiff should be able to proceed to collect consequential damages under a breach of contract theory. Plaintiff suffered financial harm that reasonably flowed followed from Defendants' failure to pay him the guaranteed bonus. Thus, even though after the breach Defendants ultimately paid Plaintiff his guaranteed bonus, Plaintiff is entitled to consequential damages caused by such breach.

Based on the foregoing, Plaintiff's labor law and breach of contract claims are not mooted by the payment of the guaranteed bonus.

### 4.   Case and Controversy for Declaratory Judgment

Defendants' pre-motion conference letter asserts that the Loan Agreement does not permit cancellation of the stock grant but Defendants have repeatedly threatened to cancel the remaining stock after satisfying Plaintiff's debt by liquidating his stock. (Compl. ¶ 63). Defendants' inconsistent positions do not resolve the controversy but only highlight the need to have a definite ruling on Defendants' ability to cancel his stock. Separately, Plaintiff is entitled to a declaration on what needs to be done with the remaining stock after it is liquidated to satisfy the debt and determination of whether Defendants are acting in a commercially reasonable manner with respect to the secured collateral.

Defendants have not conceded that the restrictive covenant is unenforceable. (In fact, Defendants seem to be keeping particularly close tabs on Plaintiff as lead counsel for the Defendants and general counsel both visited Plaintiff's LinkedIn profile today.). Plaintiff remains subject to enforcement of the restrictive covenant and cancellation of his stock if he works for a competitor. Plaintiff should not have to wait until he is harmed since there is an existing controversy over the enforceability of the restrictive covenant. Restrictive covenants with forfeiture provisions are unenforceable when an employee is terminated without cause. In Post v. Merrill Lynch, the New York Court of Appeals explained:

> Where the employer terminates the employment relationship without cause, however, his action necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer's ability to impose a forfeiture. An employer should not be permitted to use offensively an anticompetition clause coupled with a forfeiture provision to economically cripple a former employee and simultaneously deny other potential employers his services

48 N.Y.2d 84, 89 (1979). Thus, unless Defendants are willing to stipulate to the restrictive covenant's unenforceability, Plaintiff's declaratory judgment action should be permitted to proceed.

# WIGDOR LLP

ATTORNEYS AND COUNSELORS AT LAW

The Honorable John G. Koeltl
July 16, 2015
Page 6

Based on the foregoing, Plaintiff should be entitled to receive a declaratory judgment permitting him to freely seek and maintain employment.

## C.   Conclusion

Defendants' anticipated motion to dismiss should not delay proceeding with discovery in this action. Plaintiff respectfully requests that the pre-motion conference be held during the already scheduled pretrial conference on July 27, 2015 at 4:30 p.m. and that Your Honor allow discovery to proceed notwithstanding Defendants' intended motion to dismiss.

Respectfully submitted,

Scott G. Grubin

cc:   All Counsel (*via* ECF)