**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- X
BRADFORD BODINE,                      :     Civil Action No.: 15-cv-3019

             :

           Plaintiff,     :

             :

     v.              :

             :

CANACCORD GENUITY INC. and   :
DANIEL DAVIAU, in his personal and  :
professional capacities,         :

             :

             :

         Defendants.   :

             :
------------------------------------------------------------- X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

**WIGDOR LLP**

Scott G. Gribin, Esq.
Bryan L. Arbeit, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ..........................................................................................2

ARGUMENT ..............................................................................................................4

    I.      LEGAL STANDARD FOR 12(b)(6) MOTION..........................................4

    II.     THIS COURT HAS SUBJECT-MATTER JURISDICTION BASED ON
          DIVERSITY .............................................................................................4

        A. *Hertz* Test to Determine a Corporation's Principle Place of Business ...................5

        B. Canaccord's Principle Place of Business is Toronto....................................6

            1. Executives in Toronto ...................................................................7

            2. Canaccord Global Board of Directors ("Global Board") in Toronto...............10

            3. Canaccord's President is Mostly in Canada......................................11

            4. Location of Canaccord's Informal Operating Committee is Irrelevant ............11

    III.    MR. BODINE HAS PLEAD A CLAIM UNDER NYLL § 193 ................................12

    IV.    MR. BODINE IS ENTITLED TO SEEK LIQUIDATED DAMAGES FOR
          DEFENDANTS' VIOLATION OF NYLL § 193 .......................................................14

    V.     MR. DAVIAU IS PERSONALLY LAIBLE UNDER THE NYLL...........................16

    VI.    CANACCORD BREACHED MR. BODINE'S EMPLOYMENT CONTRACT.......17

    VII.   CANACCORD BREACHED ITS PROMISE TO COMPENSATE MR. BODINE ..17

    VIII.  DECLARATORY JUDGMENT .............................................................................18

    IX.    CONCLUSION......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Angello v. Labor Ready, Inc.*
    7 N.Y.3d 579 (2006) .................................................................................................13

*Ashcroft v. Iqbal*
    U.S. 662 (2009) ........................................................................................................4

*Augienello v. FDIC*
    310 F.Supp.2d 582, 590 (S.D.N.Y. 2004) ...........................................................5, 6

*Beshty v. Gen. Motors*
    327 F Supp. 2d 208 (W.D.N.Y. 2004) ..................................................................16

*Broadview Chem. Corp. v. Loctite Corp.*
    417 F.2d 998 (2d Cir.1969)..............................................................................18, 19

*Carter v. Frito–Lay, Inc.*
    74 A.D.2d 550, 425 N.Y.S.2d 115 (1st  Dep't 1980) ......................................14, 15

*Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*
    636 F.3d 101 (4th Cir. 2011) .................................................................................5

*Debejian v. Atl. Testing Labs., Ltd.*
    64 F.Supp.2d 85 (N.D.N.Y.1999) .........................................................................15

*Dow Jones & Co. v. Harrods Ltd.*
    346 F.3d 357 (2d Cir. 2003)..................................................................................17

*Eisenberg v. New England Motor Freight, Inc.*
    564 F. Supp. 2d 224 (S.D.N.Y. 2008)................................................................5, 6

*Forest Park Pictures v. Univ. Television Network, Inc.*
    683 F.3d 424 (2d Cir. 2012)...................................................................................4

*Gottlieb v. Kenneth D. Laub & Co., Inc.*
    82 N.Y.2d 457 (1993) ...........................................................................................14

*Hertz Corp. v. Friend*
    559 U.S. 77 (2010)................................................................................................5, 6

*Hoschar v. Appalachian Power Co.*
    739 F.3d 163 (4th Cir. 2014) ...........................................................................11, 12

*Irizarry v. Catsimatidis*
  722 F. 3d 99 (2d Cir. 2013)................................................................17

*Martin v. United States*
  117 Fed. Cl. 611 (Fed. Cl. 2014) .................................................15, 16

*Matthews v. City of New York*, 448 Fed. Appx.
  532 (2d Cir. 2012)...........................................................................4

*Morales v. N.Y. State Dep't of Corr.*
  842 F.2d 27 (2d Cir. 1988)) ...........................................................4

*Moreno v. U.S.*
  82 Fed. Cl. 387 (2008) ...................................................................15

*Paul Fire and Marine Ins. Co. v. Scopia Windmill Fund*, LP
  14 Civ. 8002 (JSR), 2015 WL 728024 (S.D.N.Y. Feb. 19, 2015)............5

*Reilly v. Natwest Markets Group Inc.*
  181 F.3d 253 (2d Cir 1999).......................................................14, 15

*Rowell v. Shell Chem. LP*
  14 Civ. 2392, 2015 WL 7306435 (E.D. La. Nov. 18, 2015) ...............5, 6, 11, 12

*Starter Corp. v. Converse, Inc.*
  170 F.3d 286 (2d Cir. 1999)............................................................18

*Sullivan v. Duncan*
  13 Civ. 1640 (SAS), 2015 WL 4393316 (S.D.N.Y. July 17, 2015) ......4, 5

*Topo v. Dhir*
  01 Civ. 10881, 2004 WL 527051 (S.D.N.Y. Mar. 16, 2004) ................15

**Other Authorities**

28 U.S.C. § 1332...............................................................................4
28 U.S.C. § 2201...............................................................................18
NYLL § 193...................................................................................13, 14
NYLL § 195.......................................................................................13
NYLL § 198...................................................................................14, 15

## PRELIMINARY STATEMENT

On May 13, 2015, Plaintiff Bradford Bodine ("Plaintiff" or "Mr. Bodine") filed this diversity action against Defendants Canaccord Genuity, Inc.'s ("Canaccord") and Daniel Daviau's ("Mr. Daviau") (collectively, "Defendants") asserting a claim under the New York Labor Law ("NYLL") and claims for breach of contract, promissory estoppel, unjust enrichment and declaratory judgment.  On August 14, 2015, Defendants moved to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and (6).  For the following reasons, Defendants' motion to dismiss should be denied.

First, this Court has subject-matter jurisdiction over this diversity action because there is complete diversity between the parties.  Even assuming Canaccord's day-to-day management is located in New York, Canaccord's "nerve" center is located in Toronto, Canada because those responsible for the overall direction, control and coordination of Canaccord are located there.

Second, Mr. Bodine has alleged a claim under the New York Labor Law ("NYLL"). Defendants had notice that Mr. Bodine alleged a claim under NYLL § 193 and under these circumstances, Defendants' withholding of wages should be considered a deduction or charge against wages rather than a simple failure to pay wages.  Specifically, Defendants withheld Mr. Bodine's wages (a guaranteed and non-discretionary bonus) to offset a loan.  The NYLL regulations make clear that the use of wages to repay a loan is a violation of NYLL § 193.  Even though Defendants paid the wages before litigation, Mr. Bodine is entitled to recover liquidated damages for Defendants' violation of the NYLL unless they can establish a good-faith defense. Finally, Mr. Daviau is personally liable under the NYLL not because of his corporate title, but because he is alleged to be an employer under the NYLL.

Third, Mr. Bodine has alleged a breach of contract claim related to the failure to pay wages. Defendants' argument to dismiss the breach of contract claim is misleading, and borderline frivolous, because Defendants do not dispute that that they breached Mr. Bodine's employment contract by paying him late.

Fourth, Mr. Bodine has alleged a breach of contract claim for the failure to pay him sufficient well enough to repay his loan without using his stock award. Canaccord induced Mr. Bodine to enter into a loan agreement with the promise that he would be compensated sufficiently to repay the loan without having to use his stock award. Canaccord breached this collateral agreement by not compensating him sufficiently to repay the loan. Instead, Canaccord requested that Mr. Bodine sign a general release in exchange for applying his stock award to repay the loan (and Canaccord would retain any surplus from the liquidation). Mr. Bodine refused to capitulate to Canaccord's request and seeks to hold Canaccord accountable for what he was promised. Thus, Mr. Bodine has alleged that Canaccord breached the collateral agreement to the loan (or in the alternative, has alleged claims for promissory estoppel or unjust enrichment).

To the extent that Defendants have conceded there is no actual controversy with respect to Mr. Bodine's declaratory judgment claim, that claim may be dismissed as moot.

## STATEMENT OF FACTS

On September 19, 2013, Canaccord hired Mr. Bodine as the Head of U.S. Fixed Income. (¶¶ 31-32).[1] The offer letter, which outlined Mr. Bodine's terms and conditions of employment ("Employment Contract"), provided that Mr. Bodine's compensation would consist of, among

---

[1]     Citations to paragraph numbers refer to the Complaint, attached as Exhibit 1 to the Declaration of Scott G. Grubin dated December 18, 2015.

other things, a guaranteed bonus of at least $150,000 each of his first two years.  (¶ 34).  Mr. Bodine was also awarded Canaccord Genuity Group, Inc. ("Canaccord Global") stock in the amount of $500,000 ("Stock Award"), pursuant to a "Long Term Incentive Plan" ("LTIP").  (¶ 38).

In October 2013, arbitration was initiated against Mr. Bodine on a promissory note held by his former employer, Pierpoint Securities ("Pierpoint").  (¶ 41).  The arbitration was initiated because Canaccord hired, along with Mr. Bodine, thirteen other employees from Pierpoint.  (¶¶ 41-44).  The arbitration was settled on May 9, 2015, and in connection with the settlement, Canaccord requested that Mr. Bodine agree to a loan.  (¶¶ 42, 44).  Mr. Bodine initially refused to agree to any loan amount because the settlement payment was a liability of Canaccord in connection with its acquisition of the thirteen employees from Pierpoint.  (¶ 44).  Canaccord insisted that Mr. Bodine agree to a loan and refused to distribute the liability among multiple individuals.  (¶ 45).  Mr. Bodine was assured that Canaccord was not trying to "hang him" with the loan and promised Mr. Bodine that he would be compensated well enough so that he would not have to repay the loan with his Stock Award.  (¶¶ 45, 81).  Relying on Canaccord's assurances and promise, on May 27, 2014, Mr. Bodine entered into a loan agreement in the amount of $308,000 secured by Mr. Bodine's Stock Award. ("Loan Agreement").  (¶¶ 47, 81-82).  The Loan Agreement did not contain a merger clause to exclude Mr. Bodine's collateral agreement with Canaccord.  (¶ 46).

On October 31, 2014, Mr. Bodine's employment was terminated without cause.  (¶¶ 53-54).  Canaccord offered—in exchange for a general release of claims—to accelerate the vesting of the Stock Award to repay the loan (but Canaccord would retain any surplus).  (¶ 58).  Mr. Bodine refused to agree to the release.  (¶ 58).  Canaccord then refused to pay Mr. Bodine his

3

$150,000 bonus as a charge against Mr. Bodine's debt.  (¶¶ 55-56).  After making repeated demands and hiring counsel, Canaccord paid Mr. Bodine the bonus after it was due.  (¶¶ 54, 56-57, 68).  Despite the payment, the delay caused Mr. Bodine to prematurely liquidate a retirement account and suffer other long term and extensive financial damages.  (¶¶ 59-61).

## ARGUMENT

## I.    LEGAL STANDARD FOR 12(b)(6) MOTION

In reviewing a motion for dismiss under Fed. R. Civ. P. ("Rule") 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  *Forest Park Pictures v. Univ. Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).  To survive a motion to dismiss, "the complaint must state a claim to relief that is plausible on its face, which requires the plaintiff to plead facts permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matthews v. City of New York*, 448 Fed. Appx. 532, 532-33 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "On a 12(b)(6) motion, the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Morales v. N.Y. State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (quotation marks omitted).  For the reasons below, Defendants' motion to dismiss should be denied.

## II.   THIS COURT HAS SUBJECT-MATTER JURISDICTION BASED ON DIVERSITY

28 U.S.C. § 1332 confers original jurisdiction on federal courts in all cases where the matter in controversy exceeds $75,000 and is between citizens of different States or foreign states. 28 U.S.C. § 1332 (a); *see Sullivan v. Duncan*, 13 Civ. 1640 (SAS), 2015 WL 4393316, at *4 (S.D.N.Y. July 17, 2015).  Defendants do not dispute that this actions exceeds the required amount in controversy or that Mr. Bodine (New York) was diverse from Mr. Daviau (Toronto,

Canada) at the time the Complaint was filed.  (¶ 14; see also Dkt. Nos. 3-4, 9).  Defendants move to dismiss on the basis there is not complete diversity between Mr. Bodine and Canaccord—asserting that Canaccord's principal place of business is New York.  (Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs. Mem.") at pp. 4-6; Dkt No. 9).  As explained below, Defendants' motion to should be denied because Canaccord's principal place of business or "nerve center" is Toronto, Canada.[2]

### A.  *Hertz* Test to Determine a Corporation's Principal Place of Business

In *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the Supreme Court "held that a corporation's principal place of business for the purposes of subject matter jurisdiction is its 'nerve center,' defined as 'the place where a corporation's officers direct, control, and coordinate the corporation's activities.'"  *Sullivan*, 2015 WL 4393316, at *5 (S.D.N.Y. July 17, 2015) (quoting *Hertz*, 559 U.S. at 92-93).  Courts applying the *Hertz* test have recognized that the test "focuses on where a corporation's 'high-level' decisions are made, *not where day-to-day activities are managed.*"  *St. Paul Fire and Marine Ins. Co. v. Scopia Windmill Fund*, LP, 14 Civ. 8002 (JSR), 2015 WL 728024, at *2 (S.D.N.Y. Feb. 19, 2015) (emphasis added) (citing *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 106 (4th Cir. 2011)).  Thus, a corporation's principal place of business should be where significant corporate decisions and policy-making is made.  *See Hertz Corp.*, 559 U.S. 77, 95-96 (2010) (explaining the test "points courts in a single direction, towards the center of *overall* direction, control, and

---

[2]     Although the Complaint alleges that Canaccord has its headquarters in Vancouver Canada, (¶ 13), discovery has shown that Canaccord's principal place of business is Toronto, Canada.

coordination."); *Eisenberg v. New England Motor Freight, Inc.,* 564 F. Supp. 2d 224, 229 (S.D.N.Y. 2008) ("In order to identify the corporation's "nerve center," courts focus on factors that identify the place 'where the corporation's *overall* policy originates.'") (quoting *Augienello v. FDIC*, 310 F.Supp.2d 582, 590 (S.D.N.Y. 2004) (emphasis added); *see also Rowell v. Shell Chem. LP*, 14 Civ. 2392, 2015 WL 7306435, at *5 (E.D. La. Nov. 18, 2015) (explaining that "the important consideration is the place of ultimate control by the top decision-makers.").

As explained below, Canaccord's principal place of business is Toronto because that is the "nerve" center for Canaccord's significant corporate decisions and policy-making.

**B.  Canaccord's Principal Place of Business is Toronto**

Canaccord Global operates through its subsidiaries and the president of each subsidiary or head of the country, including Canaccord's President, reports to the Canaccord Global Chief Executive Officer ("Canaccord Global CEO").[3]  (Ex. 2, Daviau Dep. at 119, 129).  The Canaccord Global had responsibility and authority over the United States operations and was the "boss" of the Canaccord President.  (Ex. 2, Daviau Dep. at 119) (testifying that, as President of Canaccord, "[the Canaccord Global CEO] was my boss")).  Based in Toronto, the Canaccord Global CEO is responsible for "providing overall leadership and direction to Canaccord Genuity"[4] and "ensuring Canaccord Genuity operates within the policy and strategy framework established by the [Global Board]."  (Ex. 3, Notice of Meeting and Management Information Circular ("Management Circular"), at p. 14;  Ex. 2, Daviau Dep. at 96, 129).  The Canaccord

---

[3]      Unless otherwise noted, Plaintiff refers to the positions and responsibilities as they existed on May 13, 2015.

[4]      The terms "Canaccord Genuity Group" and "Canaccord Genuity" both refer to Canaccord.  (Ex. 4 at p. 3).

Global CEO is the Chairman of the Global Executive Committee, a committee consisting of the top executives for each of Canaccord Global's subsidiaries.  (Ex. 2, Daviau Dep. at 26-28).  This committee meets quarterly in Toronto to discuss the operations for each subsidiary.  (Ex. 2, Daviau Dep. at 27-28, 100).

The Canaccord Global CEO is consulted before Canaccord pursues a major growth initiative or cost reduction.  (Ex. 2, Daviau Dep. at 79).  The Canaccord Global CEO has the ultimate responsibility for Canaccord's: (1) risk management; (2) market risk; (3) credit risk; (4) operational risk; and (5) capital levels and funding.  (Ex. 2, Daviau Dep. at 69-71, 80-81).

### 1.  Executives in Toronto

The Canaccord Global CEO works with other Toronto based executives to manage Canaccord's affairs.  The following are some of the Canaccord Global executives (most of which are members Canaccord's Board of Directors ("Canaccord Board")) that are responsible for overseeing Canaccord's operations:

- **The Canaccord Global Executive Vice President, Chief Financial Officer** ("Canaccord Global CFO"): (1) member of the Canaccord Board and was the Interim Chairman[5] at the time the Complaint was filed   (Ex. 2, Daviau Dep. at 68, Ex. 3 at p. 11); (2) during Mr. Bodine's employment, Canaccord's CFO referred to the Canaccord

---

[5]     As evidenced by the Canaccord Board minutes, the Canaccord Global CEO normally serves as the Chairman of the Canaccord Board (see Ex. 5).  However, in April 2015, the Canaccord Global CEO, Paul Reynolds, suddenly died after competing in a triathlon.  (Id.).  Accordingly, the Canaccord Global CFO became the Interim Chairman of the Canaccord Board (Ex. 2, Daviau Dep. at 68, Ex. 3 at p. 11).

Global CFO as his "boss" and said he deferred to the Canaccord
Global CFO on all matters related to the CFO position (Ex. 6,
Declaration of Bradford Bodine dated Sept. 16, 2015 ("Bodine Decl.")
at 13; see also Ex. 2, Daviau Dep. at 57, 61); (3) provided support to
Canaccord's President on a bi-weekly basis (Daviau Dep. at 19-20; 69-
71); (4) advised Canaccord Global CEO on changes to Canaccord's
capital levels (Ex. 2, Daviau Dep. at 69-70); and (5) involved in
Canaccord's real estate decisions and determining whether Canaccord
should enter into long-term leases or material contracts.   (Ex. 2,
Daviau Dep. at 132).[6]

- **The Canaccord Global Executive Vice President, Head of
  Corporate Development and Strategy**: (1) "responsible for assessing
  strategies for the company's global growth and corporate
  communications" (Ex. 8 p. 2); (2) provides guidance to Canaccord's
  Head of Marketing on U.S. marketing; (Ex. 2, Daviau Dep. at 25) and
  (3) listed in press releases as the contact person for "North American
  Media."  (Ex. 2, Daviau Dep. at 25-26, 111-12; see e.g. Ex. 9).

---

[6]    Defendants' Response to Plaintiff's Interrogatory No. 4 states that "the members of
Canaccord's Operating Committee exercised ultimate decision making authority over operational
decisions concerning real estate, physical security, or property leases as of May 13, 2015"
(Ex. 7).  This response contradicts Mr. Daviau's testimony that Canaccord's "real estate
decisions and long-term leases and material contracts" were "approved by Canaccord [Global]."
(Ex. 2, Daviau Dep. at 132).

- **The Canaccord Global Senior Vice-President, Finance**: (1) member of the Canaccord Board  (Ex. 01 at p. 1);  (2) provided updates to Canaccord Board on "business continuity planning" (Ex. 01 at p. 3); and (3) involved in Canaccord's real estate decisions and determining whether Canaccord should enter into long-term leases or material contracts (Ex. 2, Daviau Dep. at 132).

- **Canaccord Global Executive Vice President, Director Global Compliance & Chief Compliance Officer**: (1) "responsible for overseeing Canaccord's compliance, registration and continuing education." (Ex. 8 at p. 4) and (2) had monthly telephone calls with Canaccord's Chief Compliance Officer located in Boston, M.A.  (Ex. 2, Daviau Dep. at 64).

- **Canaccord Global Executive Vice President, Group Chief Information Officer** ("Canaccord Global Technology"): (1) "responsible for all aspects of information technology and systems and is actively involved in managing the International Trading department."  (Ex. 8, p. 3); and (2) generally kept appraised of the work of Canaccord's Chief Operating Officer.  (Ex. 2, Daviau Dep. at 58).

- **Canaccord Global Executive Vice President, Operations & Treasurer** ("Canaccord Global Operations & Treasurer"): (1) "responsible for overseeing much of the firm's back office services and administration as well was managing treasury-related activities."  (Ex. 8, p. 5); and (2) generally kept appraised of the work of Canaccord's Chief Operating Officer.  (Ex. 2, Daviau Dep. at 58).

### 2.  Canaccord Global Board of Directors ("Global Board") in Toronto

The Canaccord Global CEO is ultimately accountable to the Global Board.  The Global Board convenes mostly in Toronto[7] and "has oversight of the company-wide risk management framework"[8] (Ex. 4 at p. 24; Ex. 3 at p. 17) (Ex. 2, Daviau Dep. at 28-29, 77, 81-82).  While Canaccord has refused to provide the strategic plan in place when the complaint was filed (Ex. 2, Daviau Dep. at 93), the current strategic plan presented by the current Canaccord Global CEO to the Canaccord Global encompasses Canaccord.  (Ex. 11 ).  The Global Board annually receives updates on Canaccord's business, including the strategic direction and more significant initiatives.  (Ex. 2, Daviau Dep. at 77-78).  Several Canaccord Global Board members are also members the Canaccord Board and comprise two-thirds of Canaccord's Audit Committee (the remaining member is the Canaccord Global CFO).  (Ex. 12 at p. 1; Ex. 13).

---

[7]    Canaccord Global Board meetings were also held in other offices such as London and New York.  (Ex. 2, Daviau Dep. at 77).

[8]    Risk management responsibilities are delegated to the Global Board Audit and Risk Management Committees.  (Ex. 3 at p. 17).  "The Risk Management Committee is led by the [Global] CFO, and committee members include the [Global] CEO and senior management representation from key revenue-producing businesses and functional areas of Canaccord Genuity."  (Id.).  "The [Risk Management] Committee identifies, measures and monitors the principal risks facing the business through review and approval of Canaccord Genuity's risk appetite, policies, procedures, and limits/thresholds."  (Id.).  "The Audit Committee is responsible to ensure management has designed and implemented an effective system of internal control."  (Ex. 3 at p. 16).

### 3.   Canaccord's President is Mostly in Canada

During Mr. Bodine's tenure, Canaccord's President was "frequently not present in the [New York] office and when he was there he would communicate decisions made while he was away."  (Ex. 6, Bodine Decl. at 3).  The Canaccord President spent a significant portion of time in Canada because his family resides.  (Id. at ¶ 4; Ex. 2, Daviau Dep. at 52).  Upon reviewing and charting Mr. Daviau travel schedule between February 2015 and July 2015, it is clear that Canaccord's President spent less than one month total—out of the six months in New York—and the majority of his time in Canada.  (See Ex. 14).  In September 2015, when Canaccord's President was elected as the Canaccord Global CEO, the press release announcing his appointment unsurprisingly stated that "Mr. Daviau is based in Toronto."  (Ex. 15 at p. 2) (emphasis added).[9]

### 4.   Location of Canaccord's Informal Operating Committee is Irrelevant

Defendants argue that Canaccord's principal place of business is New York because a majority of the members of Canaccord's operating committee, responsible for the "day-to-day management of Canaccord's business," are located in New York.  (Ex. 16, Defs. Mem. at p. 5; Ex. 17, Declaration of Andrew Viles at 4-5.  But a corporation's principal place of business under *Hertz* is not determined by the location where "day-to-day management" is conducted. Rather, a corporation's principal place of business is the location where significant corporate decisions and strategy is set.  *See Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 172 (4th Cir. 2014) ("[I]f a corporation's day-to-day operations are managed in one state, while its

---

[9]     Canaccord's current president is located primarily out of Boston, Massachusetts—further demonstrating that the Canaccord's President did not to be in New York.  (Ex. 2, Daviau Dep. at 103).

officers make significant corporate decisions and set corporate policy in another, the principal place of business is the latter."); *Rowell*, 2015 WL 7306435, at *4 ("When the high-level officers are dispersed geographically, the principal place of business is where 'a critical mass of controlling corporate officers' works or where 'significant corporate decisions and strategy-forming are made,' even if some officers live and work in another state where the company's day-to-day activities occur."). The location where Canaccord's significant corporate decisions are made and strategies are set is Toronto. Even if the location of Canaccord's operating committee is relevant, the operating committee was only an "informal" committee that: (1) did not keep minutes; (2) has no documented decisions; and (3) "no bylaw or article or legal reason for the committee" exits. (Ex. 2, Daviau Dep. at 55).

Based on the foregoing, this Court has subject matter jurisdiction over this action because there is complete diversity between the parties.

## III.   MR. BODINE HAS PLEAD A CLAIM UNDER NYLL § 193

Defendants argue that Mr. Bodine's NYLL § 193 claim should be dismissed because they were not provided fair notice of the claim. (Ex. 16, Defs. Mem. at 7).[10] This argument can easily be rejected because Defendants were notified through correspondence that the Complaint alleged a claim under NYLL § 193 (Dkt No. 10) and Defendants' motion to dismiss addresses the merits of a NYLL § 193 claim. (Ex. 16, Defs. Mem. at p. 8). Thus, Defendants were provided fair notice of Mr. Bodine's NYLL § 193 claim.

---

[10]   To the extent the Court finds the Complaints deficient because it did not specify that the NYLL claim was under § 193, or for any other reason, Plaintiff respectfully requests leave to move to amend.

Defendants also argue that Mr. Bodine has not asserted a claim under NYLL § 193 because he "has alleged a failure to pay wages, not a deduction from wages."  (Id.).[11]  NYLL § 193 provides that "[n]o employer shall make any charge against wages . . . unless such charge or payment is permitted as a deduction from wages . . . ."  NYLL § 193-3.a.  The New York Department of Labor regulations for NYLL § 193 make clear that "[a]ny provision of money which is accompanied by interest . . .  may not be reclaimed through the deduction of wages." § 195-5.2; see also NYLL § 195-4.5 (explaining "[r]epayments of loans" are not "similar payments for the benefit of an employee").  Ex. 18 at p. 5.

Under the circumstances, Mr. Bodine has alleged a violation of NYLL § 193 because that Defendants used Mr. Bodine's wages to offset the amount Mr. Bodine owed under the Loan Agreement.  The Loan Agreement even provides (unlawfully[12]) that Canaccord could "repay the loan . . . from any amounts otherwise payable by the [Canaccord] to [Mr. Bodine] (including compensation)" and that the Mr. Bodine "grants to [Canaccord] a lien, security interest and right of set off as security for all obligations to [Canaccord] . . . against all deposits, credits amounts

---

[11]    Defendants concede that Mr. Bodine, as an executive, can assert a claim under NYLL § 193.  (Ex. 16, Defs. Mem. at p. 8).  Defendants do not contest that Mr. Bodine's bonus constitutes wages under the NYLL since it was guaranteed and non-discretionary.

[12]    Such agreement to repay a loan with wages is unlawful in New York—it is irrelevant that Mr. Bodine agreed to it because the "history of Labor Law § 193 manifests the legislative intent to assure that the unequal bargaining power between an employer and an employee does not result in coercive economic arrangements by which the employer can divert a worker's wages for the employer's benefit."  Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 586 (2006).

due (including compensation) . . . now or hereafter in the possession, custody, safekeeping or control of [Canaccord] or its affiliates."  (Ex. 19 at p. 6).

Defendants' failure to pay Mr. Bodine's bonus under the circumstances is properly considered a deduction or charge against the amount Mr. Bodine owed under the Loan Agreement rather than a simple refusal to pay wages.  Based on the foregoing, Mr. Bodine has alleged a violation of NYLL § 193.

## IV.    MR. BODINE IS ENTITLED TO SEEK LIQUIDATED DAMAGES FOR DEFENDANTS' VIOLATION OF NYLL § 193

As explained above, Mr. Bodine has alleged that Defendants violated NYLL § 193.  Such violation resulted in Mr. Bodine being "paid less than the wage to which he … [was] entitled under the provisions of [NYLL Article 6]."  NYLL § 198-1-a. Mr. Bodine has the right to seek liquidated damages for Defendants' willful violation of NYLL § 193.

NYLL § 198(3) states: "All employees *shall have the right to recover* full wages, benefits and wage supplements *and liquidated damages* accrued during the six years previous to the commencing of such action . . . ."  (emphasis added).  The New York Court of Appeals has explained that the legislative history behind the costs and remedies provisions of NYLL reveal that "all of the remedies in Labor Law § 198 as addressing the same problem (i.e., employers' violation of the wage laws), having the same objective (enhancing enforcement of the Labor Law's substantive wage enforcement provisions), and providing cumulative remedies for wage claims brought thereunder."  *Gottlieb v. Kenneth D. Laub & Co., Inc.*, 82 N.Y.2d 457, 463-64 (1993) (holding that "an award of . . . the liquidated damages remedy where a willful failure to pay wages has been established, [is] limited to actions for wage claims founded on the substantive provisions of Labor Law article 6.").  Liquidated damages under the NYLL are considered "'a penalty' to deter an employer's willful withholding of wages" and should be

recoverable where an employer has willfully violated the NYLL. *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 265 (2d Cir 1999) (citing *Carter v. Frito–Lay, Inc.*, 74 A.D.2d 550, 425 N.Y.S.2d 115, 116 (1st Dep't 1980), *aff'd.*, 52 N.Y.2d 994 (1981)).  A plaintiff should be entitled to obtain liquidated damages under the NYLL "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  NYLL § 198-1-a.

That an employee should be able to recover liquidated damages, in addition to unpaid wages, is consistent with such recovery of liquidated damages under the FLSA. *See Topo v. Dhir*, 01 Civ. 10881, 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) (noting that there is "general support for giving FLSA and the New York Labor Law consistent interpretations"); *Debejian v. Atl. Testing Labs., Ltd.,* 64 F.Supp.2d 85, 87 n. 1 (N.D.N.Y.1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

In *Martin v. United States*, the U.S. Court of Federal Claims held that even where the plaintiffs' full wages were paid only two weeks late, a substantive violation of the FLSA occurred and the plaintiffs were entitled to seek liquidated damages.  117 Fed. Cl. 611, 617, 626 (Fed. Cl. 2014); *see Moreno v. U.S.,* 82 Fed. Cl. 387, 404 n. 37 (2008) ("[A] cause of action to recover those wages plus liquidated damages under the FLSA was available to plaintiffs immediately following those pay periods, when it was clear that their paychecks included neither overtime pay ***nor*** liquidated damages.") (emphasis added).  Whether liquidated damages would be awarded depended on whether the defendant could demonstrate a good faith defense for the violation.  *Martin*, 117 Fed. Cl. at 626.

Defendants belated payment does not moot Mr. Bodine's right to seek liquidated damages for Defendants' willful violation of NYLL § 193.[13]  If it did, a plaintiff would be incentivized to quickly file a lawsuit to avoid an employer mooting a claim.

Based on the foregoing, this Court should deny Defendants' motion to dismiss Mr. Bodine's NYLL claim as being moot since Mr. Bodine has the right to seek liquidated damages for Defendants' violation of NYLL § 193.[14]

## V.   <u>MR. DAVIAU IS PERSONALLY LIABLE UNDER THE NYLL</u>

Mr. Daviau is personally liable for the NYLL violation because Mr. Daviau was Mr. Bodine's "employer" under the NYLL.  (¶ 14).  The Complaint alleges that Mr. Daviau was responsible for making compensation decisions affecting Mr. Bodine, was involved in the other decisions affecting Mr. Bodine's employment, and was involved in the decision to terminate Mr. Bodine's employment.  (¶ 14).  Thus, Mr. Bodine is not simply relying on Mr. Daviau's "corporate title" (Ex. 16, Defs. Mem. at p. 20), but has sufficiently alleged that Mr. Daviau was Mr. Bodine's employer.  (¶ 14).

---

[13]     While Defendants can defend against the imposition of liquidated damages by establishing a good-faith defense, such defense generally cannot be established on a motion to dismiss.  *See Martin*, 117 Fed. Cl. at 627.

[14]     This Court should decline to follow *Beshty v. Gen. Motors* since that court did not consider the statutory language permitting the recovery of liquidated damages, the legislative intent of the NYLL to sanction employers, or the analogous right to recover liquidated damages under the FLSA.  327 F Supp. 2d 208, 223 (W.D.N.Y. 2004), *aff'd*, 144 Fed Appx 196 (2d Cir. 2005) (affirming only the dismissal of the discrimination claims).

Defendants argue that Mr. Daviau is not personally liable because it is not asserted that Mr. Daviau played a person role in the decision to violate NYLL § 193.  While it can be inferred that Mr. Daviau did not have a role, Defendants' argument should easily be rejected since there is nothing in the NYLL requiring an "employer" to be complicit in the violation.  *See cf. Irizarry v. Catsimatidis*, 722 F. 3d 99, 110 (2d Cir. 2013) ("Nothing in *RSR*, or in the FLSA itself, requires an individual to have been personally complicit in FLSA violations; the broad remedial purposes behind the statute counsel against such a requirement.").

Based on the foregoing, Mr. Daviau is alleged to be personally liable for the violation of NYLL § 193.

## VI.      CANACCORD BREACHED MR. BODINE'S EMPLOYMENT CONTRACT

Defendants move to dismiss Mr. Bodine's breach of contract claim only arguing that Mr. Bodine's "allegation that 'Defendants breached the contract by refusing to pay [Mr. Bodine] his $150,000 guaranteed bonus' (¶ 78) was not true on the date on which this Complaint was filed (nor was it true during the preceding four-month period." (Ex. 15 Defs. Mem. at 16). Defendants' argument is misleading, and borderline frivolous, since Defendants do not dispute that Mr. Bodine was paid his bonus late under the Employment Contract.  (Ex. 16, Defs. Mem. at p. 3 n.2 (arguing "that payment to the Plaintiff on January 12, 2015 *was only six weeks late*.") (emphasis added).  Because Canaccord breached by not making timely payment of the bonus, this Court should deny Defendants' motion to dismiss Mr. Bodine's breach of contract claim.

## VII.     CANACCORD BREACHED ITS PROMISE TO COMPENSATE MR. BODINE

Mr. Bodine entered into the Loan Agreement based on Canaccord's promise that he would be compensated well enough that would not have to repay the Loan Agreement with his

collateralized Stock Award.  (¶¶ 47, 81-82).[15]  Canaccord breached its promise when it terminated Mr. Bodine without having compensated him sufficiently to be able to repay the Loan Agreement without using his Stock Award.  (¶¶ 53, 58).  Thus, Mr. Bodine's fourth and fifth cause of action for promissory estoppel and unjust enrichment are more appropriately considered a breach of contract claim.  To the extent there is not an enforceable agreement, Mr. Bodine should be able to pursue a promissory estoppel or an unjust enrichment claim because Mr. Bodine detrimentally relied on Canaccord's promise and it would be unjust for Canaccord to benefit from its false promises.

## VIII.  **DECLARATORY JUDGMENT**

The Declaratory Judgment Act reads: "In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  The Second Circuit has "articulated a simple test that asks (1) whether the judgment will serve a

---

[15]     The agreement to pay Mr. Bodine sufficient compensation is collateral to the Loan Agreement so that it can be proved by parol evidence.  *See Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 295 (2d Cir. 1999) ("When an agreement is not integrated, the parol evidence rule does not apply and extrinsic evidence of a separate oral agreement can be considered.")  To the extent Defendants dispute the agreement is not integrated, this determination is a fact intensive inquiry that should not be determined on a motion to dismiss.  *See id.* (explaining that when "a contract lacks an express integration clause the district court must 'determine whether the parties intended their agreement to be an integrated contract by reading the writing *in light of the surrounding circumstances.*'") (citation omitted) (emphasis added).

18

useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969)). "[I]f either of these two objectives can be achieved the action should be entertained and the failure to do so is error." *Broadview*, 417 F.2d at 1001.

The LTIP Plan provides that the committee responsible for administering the plan "may from time to time establish, amend, rescind or waive such rules, regulations, agreements, policies, guidelines and instruments and make determinations . . . . " (Ex. 20, Exhibit B annexed to the Declaration of Ariella Feingold). However, Defendants' motion to dismiss appears to concede that Defendants do not have a legitimate basis to threaten to cancel any stocks units that would remain after applying them to the Loan Agreement. (Ex. 16, Defs. Mem. at p. 16) (stating there is "no actual controversy about Canccord's alleged ability to cancel any stock units that remain following liquidation of the Plaintiff's stock units to satisfy his debt."). Thus, to the extent that Defendants have made this admission, Mr. Bodine's claim for declaratory judgment is moot.[16]

---

[16]   Mr. Bodine's claim for declaratory judgment with respect to the restrictive covenant is also moot because more than twelve months have elapsed since his termination.

## <u>CONCLUSION</u>

For the forgoing reasons, Mr. Bodine respectfully requests that the Court deny

Defendants' motion to dismiss the Complaint.

Dated: December 18, 2015
   New York, New York         Respectfully submitted,


                **WIGDOR LLP**

                By: _____
                  Scott G. Grubin
                  Bryan L. Arbeit

                85 Fifth Avenue
                New York, NY 10003
                Telephone:  (212) 257-6800
                Facsimile:   (212) 257-6845
                sgrubin@wigdorlaw.com
                barbeit@wigdorlaw.com

                *Counsel for Plaintiff*